Joel P. Waelty (SBN 226728)
LAW OFFICES OF JOEL P WAELTY
101 Cooper Street, Suite 209
Santa Cruz, CA 95060
Tel.: (408) 752-2003
E-Mail: joel@waeltylaw.com

Attorneys for Plaintiff
MATTHEW BEHAN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BEHAN, | ) No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR BENEFITS AND FOR** |
| | ) **VIOLATIONS OF THE EMPLOYEE** |
| v. | ) **RETIREMENT INCOME SECURITY** |
| | ) **ACT OF 1974 (ERISA)** |
| THE PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, an ERISA | ) |
| Fiduciary, KPMG LLP  LONG TERM | ) |
| DISABILITY INSURANCE PLAN, a | ) |
| welfare benefit plan, KPMG LLP, an | ) |
| ERISA Plan Administrator, | ) |
| | ) |
| Defendants. | ) |

Now comes the Plaintiff Matthew Behan ("Mr. Behan"), who for his Complaint alleges as follows:

## JURISDICTION

1.     Jurisdiction of this Court is based on the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and in particular, ERISA §§502(e)(1) and (f), 29 U.S.C. §§1132(e)(1) and (f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the district courts jurisdiction over actions that arise under the laws of the United States.

<u>VENUE</u>

2.      Venue is proper under ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), in that the employee benefit plan that is the subject of Mr. Behan's claims is administered in this District, and the plan can be found within this District, a defendant may be found within this District, and the violations of ERISA described below occurred within this District.

<u>PARTIES</u>

3.      Plaintiff Mr. Behan is, and at all times mentioned herein was, a participant and/or beneficiary, within the meaning of ERISA §3(7), 29 U.S.C. §1002(7), in the KPMG LLP Long Term Disability Insurance Plan (the "Plan").  Mr. Behan is, and at all times pertinent herein was, a resident of Morgan Hill, Santa Clara County, California.

4.      The Plan is, and at all times mentioned herein was, an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. §1002(1) which provides long-term disability ("LTD") benefits to eligible employees of KPMG LLP ("KPMG").  The Plan may be sued as an entity pursuant to ERISA §502(d)(1), 29 U.S.C. §1132(d)(1). The Plan is named as a Defendant herein pursuant to Fed. R. Civ. P. R19(a) solely to ensure that complete relief can be granted.  A copy of this Complaint will be served as required by ERISA §502(h), 29 U.S.C. §1132(h), upon the Secretary of Labor and the Secretary of Treasury.

5.      Defendant KPMG LLP is incorporated under the laws of Delaware with its principle place of business in Netherlands.  Mr. Behan was a Partner of KPMG and it was thusly his employer and the Plan sponsor. KPMG is the Plan Sponsor and Administrator of the Plan, an ERISA fiduciary within the meaning of ERISA §3(21), 29 U.S.C. §1002(21), with ultimate authority over the Plan and ultimate responsibility for decisions made under the Plan.

6.      Defendant Prudential Insurance Company of America ("Prudential") is the Claim Administrator for the Plan (the "Claim Administrator") and exercises discretion and

control over plan assets and plan management, and as such is a fiduciary within the meaning of ERISA §3(21), 29 U.S.C. §1002(21).  Prudential does substantial business in the State of California, providing disability claims administration services to corporations throughout the State of California.

<u>FACTUAL ALLEGATIONS</u>

7.      Born in November, 1970, Mr. Behan is presently 52-years old.  He lives in Morgan Hill, California with his daughter.

8.      He possesses a Bachelor of Science from Liverpool University, UK (1993) and he became a chartered Accountant in 1997 while working at KPMG (UK).  Mr. Behan's entire career has been devoted to the field of Accounting, Financial Auditing, and advisory work at KPMG.  His career progressed to a leadership role with his final title being that of Level V Partner at KPMG LLP (US) (second highest level of leadership).  He has enjoyed professional success at every level.  This disability represents the first time that he has been permanently precluded from performing at the highest level of firm leadership.

8.      Mr. Behan was an employee of KPMG when he became incapacitated, profoundly and permanently disabled in August 1, 2019 as a result of a neurological condition.

9.      The subject policy requires Prudential to pay Mr. Behan a monthly benefit if he becomes Disabled while insured under the policy, is Disabled through the Elimination Period, remains Disabled beyond the Elimination Period, and submits Proof of Loss.  For insureds such as Mr. Behan, the Policy defines "Disability" or "Disabled" as follows:

> **"How Does Prudential Define Disability?**
>
> You are disabled when Prudential determines that:
>
> - You are unable to perform the ***material and substantial duties*** of your ***regular occupation*** as partner of KPMG or any other "Big Four" accounting firms due to your ***sickness*** or ***injury;*** and

- You are under the *regular care* of a *doctor.*

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

*Regular occupation* means the occupation you are routinely performing as a source of income when your disability begins."

In addition, the policy states:

**"What Information is needed as Proof of Your Claim?**

Your proof of claim, provided at your expense, must show:

1. That you are under the *regular care* of a *doctor*.

2. The appropriate documentation of your monthly earnings.

3. The date your disability began.

4. Appropriate documentation of the disability disorder.

5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

6. The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

7. The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to

Prudential, indicating that you are under the regular care of a doctor.

This proof, provided at your expense, must be received within 30 days of a request by us.

10.     Regardless of how the policy defines "total disability," the California Supreme Court set higher standards by which insurers must abide in *Erreca v. Western States Life Ins. Co.* (1942) 19 Cal.2d 388, 396:

> 'Total Disability' does not signify an absolute state of helplessness but means such a disability as renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way. Recovery is not precluded...because the insured is able to perform sporadic tasks, or give attention to simple or inconsequential details incident to the conduct of the business

In *Moore v. American United Life Insurance Co.* (1984) 150 Cal.App.3d 610, 632, the court further explained how the concept of "total disability" is to be interpreted in California:

> The term 'total disability,' as applicable to the insurance policy involved in this case, is defined as a disability that renders one unable to perform with reasonable continuity the substantial material acts necessary to pursue his usual occupation in the usual and customary way....

The test of "total disability" set forth in *Erreca* is still black-letter law. "California law requires courts to deviate from the explicit policy definition of 'total disability' in the occupational policy context." (*Hangarter v. Provident Life and Accident Ins. Co.* (9th Cir. 2004) 373 F.3d 998, 1006.)

11.     Prudential would initially begin paying a monthly benefit to Mr. Behan, but by letter of January 28, 2022, Prudential claimed to be justified in terminating Mr. Behan's LTD Benefits.    Prudential offered the following justifications for terminating benefits:

a. The neuropsychological testing wasn't valid and reliable evidence of impairments.

b. That a Partner of KPMG's job requirements were similarly performed as Mr. Behan's new role as a Program Manager for Alphabet.

For the reasons set forth below, these conclusions are based on Prudential's self-serving and biased review of the medical and occupational information presented by Mr. Behan and his treating physicians.

12.      At the time he became disabled, Mr. Behan was working as a Partner at KPMG a Big-4 Accounting firm, formerly a Big-6 Accounting firm (*parentheticals* explaining how the Big-6 became the Big-4 accounting firms).  The Big-6 Accounting Firms were:

- Arthur Andersen (*dissolved*);
- Coopers & Lybrand (*merged with Price Waterhouse to become PWC*);
- Deloitte & Touche (*now Deloitte*);
- Ernst & Young (*now EY*);
- KPMG;
- Price Waterhouse (*merged with Coopers & Lybrand to become PWC*).

KPMG was made up of only 2,335 partners (as of 2020) in the USA, directing total staff of over 35,000 employees. KPMG is the third largest of the Big-6 firms, with the following statistics:

- U.S. staff, including partners: 35,000+
- Worldwide staff, including partners: 219,000+
- U.S. offices: 100+ in all 50 states
- Worldwide offices: 650+ in 147 countries
- Annual revenue in the U.S.: Nearly $10 billion for the fiscal year ending Sept. 30, 2019
- Worldwide annual revenue: $29.8 billion for the fiscal year ending Sept. 30, 2019
- Market share: KPMG serves more than 82% of the FORTUNE Global 500 and more than 80% of the Forbes Global 1000

(https://home.kpmg/us/en/home/about/kpmg-fast-facts.html (June 20, 2022))

13.      KPMG is a professional services firm that places high demands on its partners,

imposing an exacting and unforgiving level of responsibility.  This pressure creates a work environment that does not permit anything less than optimal focus, precision, and performance.

14.     As the administrative record reflects, Mr. Behan's job duties were near the highest level of managerial responsibility, oversight and management within this large accounting firm.  (*See* Administrative Record at MB 24-29, 22.)   Many of his job duties were relational (internal and external), impacting/impacted-by Mr. Behan's mental health.  His job duties were as follows:

| **Duty** | **Hours Per Week** |
|---|---|
| **Lead Partner** | **20-24** |

- Build relationships
- Support other partners sales to client
- Management of other partners and ARD's
- Dealing with client issues
- Financial targets
- Travel

…

| **Client Delivery** | **20-24** |
|---|---|

- Identify and acquire new clients
- Manage client relationships
- Deal with client issues
- Train client service team
- Manage workload (self and team)
- Coach and develop individual team members
- Address team performance issues
- Review deliverables to client

- Achieve financial targets

…

**Training and Marketing**                              **10-12**

- Develop and deliver programs

- Travel (US and Global)

15.     By its denial of benefits, Prudential seeks to analogize the job requirements of a partner at a Big-6 firm and the position he currently holds at Alphabet as a 'Sr. Program Manager.'   The title and level of managerial responsibility – alone -- are indicia of Prudential's misunderstanding of his former and current occupations.

16.     Alphabet's assigned title of Sr. Program Manager is several levels lower than that of a director or officer.   On the other hand, the title of Partner at KPMG reflected officer/owner responsibility that could include, *inter alia*, malpractice exposure for his own performance as well as the acts of his partners and those reporting to him.

17.     Meanwhile, the Sr. Program Manager position carries a much lower level of responsibility and leadership attributes.  It is also much less relational, making it a position more suitable for accommodating emotional and relational impairments caused by Mr. Behan's neurologic condition.

18.     Moreover, Alphabet is one of the most competitive salary ranges in the Silicon Valley.  Despite this, Mr. Behan's Alphabet salary of ~$246,000 is in clear contrast with his KPMG target salary of $825,000.  This contrast is commensurate with the disparity of responsibilities, leadership, and pressure required by these respective positions.

19.     Finally, the undisputed fact that Mr. Behan was asked to resign his partnership with KPMG based squarely upon his disabilities and related impairments, is definitive proof of his inability to function in the more prestigious, higher responsibility and better compensated role at KPMG.

20.     Mr. Behan's date of disability is August 1, 2019. (MB1)  He was rendered disabled

from mental health conditions that were impairing his ability to continue his profession as a Partner of KPMG, a Big-6 accounting firm.  The subject LTD Policy issued to KPMG provides for a one year waiting period on benefits.  The administrative record contains a detailed comparison of the duties between being a Big-6 Partner and the role he holds at Alphabet.

21.    On June 12, 2020, Mr. Behan submitted an application for LTD benefits to Prudential.   (MB19-29; 31-34)     The bases for his claim are contained within the administrative record. *Id.* By the end of his employment at KPMG, Mr. Behan's mental health was deteriorated to the point that he was considered to be an incapable leader of the organization, even if he was capable of productive work.  *Id.*

22.    Mr. Behan was found by Prudential to be disabled and qualified to receive Long Term Disability benefits (LTD) through January 19, 2022 under the terms of the Plan (~17 months).  However, LTD benefits were denied thereafter based on Prudential's medical evaluation by Lauren Drag, Ph.D (01/11/22) and occupational analysis performed by Steve Lambert (12/27/21).   This reversal is discussed in greater detail below.

23.    Prudential referred Mr. Behan's claim for neuropsychological testing by Lauren Drag, Ph.D.  This came to be the medical data upon which Prudential chose to anchor its denial of benefits.

24.    Despite a host of treating physicians supporting Mr. Behan's disability on an emotional/behavioral basis, Prudential offers invalid neuropsychological testing to support its denial.   There are two fallacies in this offer that are explained in the administrative record.

25.    Significantly, the testing does not measure the impact that emotional and psychological disorders may have on Mr. Behan's ability to interact with colleagues, subordinates and clients.  It also lacks any probative value to real-time experience of stress and pressure on the psychological conditions that Prudential admits that Mr. Behan is

suffering from.   It is beyond reasonable dispute that a quiet testing setting of NPT is much different than juggling interactions with stakeholders, clients, and colleagues in a high paced environment.

26.     In an effort to paint broad strokes with the faulty NPT results, Prudential appears to discredit medical support of Mr. Behan's disability.   Below is a recitation of medical letters supporting disability.

A.      On August 16, 2020, Tammy Saah, M.D. offered the following rebuttal to the opinion of Prudential's consultant, Dr. Gillman as follows:

> I do, however, disagree with your assessment and conclusion. …   It is true that Mr. Behan is able to complete activities of daily living and able to maintain his household.  However, it is vital to note that being able to do these low-level basic tasks in no way can be extrapolated to him being able to perform the highly-demanding, stressful and focused duties of a Senior Big 4 accounting partner.   In fact, KPMG's requirement for him to retire is evidence of the fact that he cannot work in his capacity effectively. …  Mr. Behan's ████ has had a large impact on his ability to work effectively and consistently, and has resulted in disability so significant that he was requested to withdraw from his position at KPMG.  During 2018/2019, he had shown a multitude of days of non-work attendance.  His symptoms had gravely impacted his work and also his ability to manage his team and other partners.  For example, it is documented in his work file that he had, on a number of occasions, been difficult to work with.  This was relating to rapidly changing moods and last-minute cancellations of meetings both internally and externally with clients.   There was also documentation of his difficulty in interacting with clients and staff, due to ████████████████████.  Due to his ████████, he often micro-managed his teams and created a negative work environment, transferring his anxiety onto his colleagues and clients.  He was unable to build relationships and be effective in his role due to these impairments. …
> It is, therefore, my opinion that Mr. Behan is unable to perform the role and activities required for a Big 4 Partner.  I strongly recommend that for more detail on the day to day impact, you should also reach out to Dr. John McKeller.

(MB 447-448)

B.      On February 22, 2021, Dr. Williams wrote a letter in support of Mr. Behan's LTD benefits from a UNUM underwritten policy:

> During treatment, Mr. Behan has engaged in Cognitive Behavioral Therapy (CBT).  During the course of this treatment, Mr. Behan has explored foundational beliefs and automatic thinking that are associated with increased emotional distress and avoiding behavioral activities.  Mr. Behan has also identified his core values and

has begun to identify value-oriented goals [] as well as actionable steps toward goals.

Mr. Behan's diagnosis is well-documented in its frequent impairment of one's ability to function on a high and competent level.  Mr. Behan's work to date has evidence thought patterns that are somewhat rigid and structured.  As a result, he experiences high distress and discomfort in environments requiring engagement in oversight/leadership and consistently meeting strict deadlines.  Currently, Mr. Behan is taking steps to secure and maintain gainful employment that will allow for some flexibility, slower pace, and less oversight.  Correspondingly, it is highly unlikely that Mr. Behan would be able to succeed in his prior position at KPMG.  At this time, the leadership requirements, performance expectations and interpersonal demands would likely contribute to greater distress and an increase in dysfunction.  As such, the outcome of any return to his prior place of employment would likely be the continuance, maintenance, and aggravation [of] ██████████████.  Moreover, a return to his prior position would significantly compromise the efforts he's made thus far and would jeopardize his ability to make a full recovery.

(MB 657-658)

C.     On May 31, 2021, Dr. Williams offered further support for Mr. Behan's disability, writing:

Mr. Behan's previous behavioral health provider recommended that he be off work. I continue to support the recommendation of the previous provider [due to] ████, recurrent …   Mr. Behan's diagnosis is well -documented in its frequent impairment of [his] ability to function on a high and competent level. Mr. Behan's work to date has evidenced thought patters that are somewhat rigid and structured.  As a result, he experiences high distress and discomfort in environments requiring engagement in oversight/leadership and consistently meeting strict deadlines.  At this time, the leadership requirements, performance expectations and interpersonal demands of his work position would likely contribute to greater distress and an increase in dysfunction. …   Mr. Behan was admitted to the Alta Bates facility in 2019 related to ██████████.

(MB 949-953)

On June 25, 2021, Dr Williams reiterated Mr. Behan's impairments, writing:

Currently, Mr. Behan continues to take steps to secure and maintain gainful employment that will allow for some flexibility, slower pace, and less oversight.  Correspondingly, it is highly unlikely that Mr. Behan would be able to succeed in his prior position at KPMG.  As such, the outcome of any return to his prior place of employment would likely be the continuance, maintenance, and aggravation [of] his ██████████.  Moreover, a return to his prior position would significantly compromise the efforts he's made thus far and would jeopardize his ability to make a full recovery.

(MB 965-966)

D.     On December 16, 2021, Christian Williams, Ph.D. wrote a letter in

response to the findings of Prudential's consultant, Dr. Lauren Drag's.

I write this letter in reference to Mr. Matthew Behan's long Term Disability claim. I am a clinical psychologist with a specialty in depression, anxiety, stress, and trauma. I have served as Mr. Behan's psychologist since September 16, 2020. Mr. Behan recently underwent formal Neuropsychological testing and I have received a copy of the corresponding report from Prudential along with a request to comment on the conclusions of the assessment. This letter is intended to present additional information that I believe is pertinent to Mr. Behan's continued need for long Term Disability.

The neuropsychological evaluation conducted by Dr. Lauren Drag presents a cogent and informative assessment of Mr. Behan's current level of cognitive and psychological functioning via a review of prior clinical documents, Mr. Behan's own report of his concerns, and an intensive battery of neuropsychological assessments. Dr. Drag notes (on multiple occasions) that Mr. Behan experiences a significant level of depression and anxiety. Dr. Drag adds that validity scales within measures of psychological functioning (e.g., MMPI) suggest a response pattern reflecting an overreporting of psychopathological symptoms. As a result of invalid test performance, Dr. Drag concludes that the severity of Mr. Behan's symptoms and his psychological functioning cannot be established.

Given Dr. Drag's reservations concerning the inability of the neuropsychological assessment to accurately assess the severity of Mr. Behan's psychological symptoms and current level of functioning, I wish to offer additional information. Mr. Behan has a diagnosis of ███████████. Mr. Behan's diagnosis is based on meeting symptomatic criteria for ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████. Based on my ongoing weekly psychotherapeutic encounters with Mr. Behan, I have noted that recurrent and prolonged experience of marked distress (e.g., emotional suffering) and dysfunction (e.g., disruptions to one's ability to perform daily tasks).

Mr. Behan's diagnosis is well-documented in its frequent impairment of one's ability to function on a high and competent level, While Dr. Drag presents understandable uncertainties related to Mr. Behan's potential over-endorsement of psychological symptoms, it is my professional opinion that Mr. Behan suffers from ████████████████████████████████████████████ at a severity that indicates an inability to return to his prior position at KPMG or a similar position at another big four accounting firm. Mr. Behan's therapeutic work to date has evidenced thought patterns that are somewhat rigid and structured. As a result, he experiences high distress and discomfort in environments requiring engagement in oversight/leadership and consistently meeting strict deadlines. At this point in time, a return to his prior position of employment would cause a deleterious impact on Mr. Behan's mental health. The leadership requirements, performance expectations and interpersonal demands would likely contribute to greater distress and an increase in dysfunction. As such, the outcome of any return to his prior place of employment would likely be the continuance, maintenance, and aggravation of his clinical depression. Moreover, a return to his prior position would significantly

compromise the efforts he's made thus far and would jeopardize his ability to make a full recovery.

(MB 965-966)

     E.     On March 9, 2022, Dr. Williams wrote a letter to UNUM in support of Mr. Behan's continued disability, writing:

> I write this letter in reference to Mr. Matthew Behan's Long Term Disability claim. I am a clinical psychologist with a specialty in depression, anxiety, stress, and trauma. I have served as Mr. Behan's psychologist since September 16, 2020.
>
> []
>
> I have consulted with Dr. Westbrook to discuss Dr. Ursprung's questions. Dr. Westbrook notes that, while her report states that Mr. Behan has the cognitive ability to obtain and maintain gainful employment. It is important to note her recommendation that the patient would not be able to work successfully in his former position at KPMG given the increased pressure, time limited nature of his responsibilities, and above average demands on his cognitive functioning with regard to managing his own role and supervising the work of other. Based on my ongoing weekly psychotherapeutic encounters with Mr. Behan, I have noted recurrent and prolonged experience of marked distress (e.g., emotional suffering) and dysfunction (e.g., disruptions to one's ability to perform daily tasks). Dr. Westbrook and I agree that the results from the 2020 report continue to indicate necessary changes that will promote Mr. Behan's psychological well-being.
>
> Mr. Behan continues to experience symptoms of ███████████ ████████████████ at a severity that have not changed significantly since Dr. Westbrook's evaluation in 2020. Mr. Behan's diagnosis is based on meeting symptomatic criteria for a dual diagnosis, including: ██████████████ ████████████████████████████████████████████ ████████████████████████████████████. At this point in time, a return to Mr. Behan's prior position of employment would cause a deleterious impact on Mr. Behan's mental health. Moreover, a return to his prior position would significantly compromise the effort he's made thus far and would jeopardize his ability to make a full recovery.

Dr. Westbrook adds,

> patients with depression can experience changes to their simple and complex attentional abilities, working memory (i.e the ability to manipulate information in multitasking, problem solving, initiation, motivation, perseverance etc.)  It is possible that with a patient with severe, prolonged, ████████████████████ that his cognitive functioning would be impaired at a level that would impact his ability to successfully and efficiently function, including within a work environment. However, it should also be noted that impairments in cognition are also known to resolve with an improvement in depression symptoms. Nonetheless, this patient's ████████ is chronic and longstanding and historically has been resistant to psychiatric and psychotherapeutic intervention.
>
> Furthermore, I believe that it is imprecise to conclude that Mr. Behan's current

occupational duties are 'very similar' to his prior position. At beginning of our therapeutic interactions, Mr. Behan noted that one of his primary goals was to enact Dr. Westbrook's recommendation to identify specific differences and changes from his prior employer that would engender a work environment that promotes (rather than deteriorate) his mental wellbeing. Mr. Behan's current employment reflects substantial variances from KPMG that he has identified in therapy, including: reporting to one superior, dedicated focus on one task at a time, flexibility in taking breaks/time off to prioritize other life demands, no travel requirements, and no sales obligations. The alterations that Mr. Behan has prioritized in his current employment has also required a substantial reduction in level of responsibility and remuneration.

Given that I began my therapeutic relationship with Mr. Behan in September 2020, my records and observations reflect changes or aggravations in Mr. Behan's condition after his separation from that prior employer. As such, I highly recommend correspondence with longer-employment at KPMG and can denote any longitudinal variance in psychiatric symptoms, distress and dysfunction since his separation and into his recent new position/employment. I lack thereof) to other forms of treatment (e.g., ketamine infusions, medications) for his psychiatric conditions.

E.      On April 21, 2022, Psychiatrist Tammy Saah, M.D. offered the following support of Mr. Behan's continued disability under the LTD policy underwritten by UNUM, and a copy forwarded to Prudential:

> I want to begin by making it clear that my main focus with Mr. Behan is on his pharmacological management of ████████████████ and ███████████████ We meet every 2 to 3 months for medication evaluation and the evaluation of his ongoing ████████ therapy. Mr. Behan is more closely monitored by his psychologist, Dr. John McKellar, with whom he meets on a weekly or biweekly basis.

> Mr. Behan's current ████████████ and other psychopharmacology treatments have provided a significant improvement in symptoms, yet as he has been undertaking treatment for more than a year, it has not improved his symptoms enough to eradicate the impact of ████ on his day-to-day work life (as evidenced by stable mood and anxiety rating scales that have remained unchanged). It is true that Mr. Behan is able to succeed now in his role as Sr. Program Manager, and that he has made significant improvements in his general level of cognitive function. However, this in no way can be extrapolated to him being able to perform the highly demanding, stressful and focused duties of a Senior Big 4 senior accounting manager. The role of Sr. Program Manager is much smaller in scope (with no direct reports, only one project, no travel, manageable work hours with no weekend work, and one direct-report manager versus matrix management) and is the maximum amount of work manageable by Mr. Behan at this time.

> Mr. Behan's ████ has had a large impact on his ability to work effectively and consistently and has resulted in disability so significant that he was requested to withdraw from his position at KPMG. During 2018/2019, he had shown a multitude of days of non-work attendance. His symptoms had gravely impacted his work and also his ability to manage his team and other partners. For example, it is

documented in his work file that he had, on a number of occasions, been difficult to work with. This was relating to rapidly changing moods and last-minute cancellations of meetings both internally and externally with clients. There was also documentation of his difficulty in interacting with clients and staff, due to paralyzing anxiety symptoms. Due to his anxiety, he often micro-managed his teams and created a negative work environment, transferring his anxiety onto his colleagues and clients. He was unable to build relationships and be effective in his role due to these impairments. He was therefore asked to retire from his role as a partner.

Mr. Behan has also complained about his short-term memory and intermittent cognitive challenges from the beginning of my being his psychiatrist (and he believes this started after his ECT treatment in 2010). It is well-documented that ████████████ can cause similar symptoms. To date he has accepted the challenges this has resulted in, however I decided that a more detailed assessment would be valuable, so he was referred to Dr. Sachdev for a full neurological evaluation. After his preliminary meetings and testing, Dr. Sachdev felt Mr. Behan warranted a more detailed evaluation. He was then referred to a neuropsychologist, Dr. Westbrook, who completed her written report and can be contacted directly for those results.

Finally, it should be noted that Mr. Behan's ████████████ require him to be out of work for one day every other week, during which he cannot work nor be responsive to his team or clients.

It is my opinion that Mr. Behan is unable to perform the role and activities required for a senior accounting manager at a Big 4 firm. However, the lower scope of program manager, while still a stretch, will hopefully be manageable for Mr. Behan. I am optimistic that with adequate mental health therapy, medication, and ketamine infusions, he will be able to succeed in this particular role.

27.    Dr. Saah is most qualified to opine as to Mr. Behan's ongoing restrictions and limitations on a psychiatric basis.   During the underlying claim evaluation process, Prudential was made aware that she was willing to write a letter in support of the claim or to engage in a peer-to-peer review of Mr. Behan's condition.   Unfortunately, she was temporarily on maternity leave when Dr. Drag completed her NPT testing.   Instead of waiting to make a claim determination when Dr. Saah returned from leave, Prudential opted to deny the claim without performing a full and complete review.   The observations and recommendations of treating physicians provide real-time assessments of Mr. Behan based upon hours of face-to-face treatments over a prolonged period.   A paper review, or a day of NPT testing, is no substitute for these many hours of treatment and the expert opinion shared by those furnishing direct treatment to Mr. Behan.

28. Prudential also sought to minimize its own findings supporting impairment.

A.      K. McCaffrey noted there are medical records reflecting serious mental illness including, *inter alia*, ███████████████████████████████████ ████████████████████. (MB 710)

B.      Prudential physician analyst, Dr. Hayes (psychiatry), rightly concluded that Mr. Behan was impaired by his mental health conditions. (MB 755-756)

C.      Prudential arranged for neuropsychological testing by Lauren Drag, Ph.D. Due to invalid testing results, she was unable to verify Mr. Behan's cognitive impairment. However, she repeatedly confirmed his behavioral/mental health impairments, stating that

> It is more likely than not that Mr. Behan continues to experience a significant level of depression and anxiety at the current time that has not resolved despite multiple treatments and interventions.

(MB 1118-1141)

D.      Claim analyst, Carrol, then engaged in a material omission, claiming that the NPT did not appear to support impairment and recommending denial on this basis. His claim note completely ignored Dr. Drag's repeated confirmation that Mr. Behan suffered from *serious* ██████████████, something that Dr. Williams and Dr. Saah have repeatedly confirmed to Prudential.

29.    On March 10, 2023 and again on May 12, 2023, pursuant to 29 C.F.R. §2560.503-1(1)(h)(iii), Mr. Behan requested from Prudential copies of all documents relevant to Mr. Behan's claim for benefits including all documents relied upon, internal deliberation and claim notes, along with governing Plan documents and amendments thereto. In response, no copies of claims materials relating to the decision on Appeal were produced.

30.    On July 15, 2022, Mr. Behan timely appealed Prudential's denial of his claim for additional long-term disability benefits on behalf of Mr. Behan. Despite overwhelming evidence in support of his claim, on   January 25, 2023, Prudential wrongly and unreasonably continued to uphold its prior determination denying additional long-term

disability benefits to Mr. Behan.

31.     In denying Mr. Behan's appeal, Prudential arbitrarily and unreasonably interpreted the terms of the Plan and relied upon incorrect and incomplete information regarding Mr. Behan's employment at KPMG vis-à-vis Alphabet, was selective and arbitrary in its evaluation of the medical evidence, and applied an arbitrary and unreasonable interpretation of the Plan terms.

32.     Upon information and belief, the Plan and KPMG have responsibility for the payment of benefits under the Plan, including by way of directing payment from the benefit trust for such benefits when benefits are payable.

33.     Mr. Behan is informed and believes and thereon alleges that Defendants unreasonably and wrongfully underpaid Mr. Behan's disability benefits under the Plan by other acts and omissions of which Mr. Behan is presently unaware, but which may be discovered in this litigation and of which Mr. Behan will make Defendants aware once such acts or omissions are discovered by Mr. Behan.

34.     Mr. Behan has exhausted all administrative remedies required under ERISA and he has performed all duties and obligations on his part to be performed under the Plan.

<u>FIRST CAUSE OF ACTION</u>
Claim for Benefits Under the Terms of the Plan
pursuant to ERISA §502(a)(1)(B)
(Against Prudential and the Plan)

35.     Mr. Behan realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

36.     In committing the acts and omissions herein alleged, Prudential and the Plan failed to pay Mr. Behan the full and proper amount of his long-term disability benefits in accordance with the terms of the Plan. In so doing, Prudential's actions were wrongful, arbitrary, and capricious, and in violation of the terms of the Plan.

37.     As a result of the violations of ERISA herein alleged, and the failure to pay benefits to which Mr. Behan is entitled, Mr. Behan, on behalf of Mr. Behan, is entitled to monetary

recovery pursuant to ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), which authorizes the recovery of benefits due under the terms of an employee benefit plan.

<u>SECOND CAUSE OF ACTION</u>
Breach of Fiduciary Duties and Violation of ERISA
Under ERISA § 502(a)(3)
(Against KPMG and Prudential)

38.     As an alternative claim for relief pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff alleges as follows: Plaintiff realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

39.     ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

40.     ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

41.     ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

42.     ERISA §503, 29 U.S.C. §1133 requires an employee benefit plan to establish and maintain a reasonable claims procedure

43.     In committing the acts and omissions herein alleged, Prudential and KPMG breached their fiduciary duties in violation of ERISA §§404(a)(1)(A), (B) and (D), 29 U.S.C. §§1104(a)(1)(A)(B) and (D) and violated the provisions of ERISA, including but not limited to ERISA §503, 29 U.S.C §1133.

44.     Defendants' actions have caused Mr. Behan significant harm, including incurring substantial attorney fees and costs in seeking to enforce their rights under the Plan and

ERISA. A claim for benefits under the Plan does not provide an adequate remedy at law in light of Prudential's and KPMG's conduct in violating the terms of the Plan and ERISA.

45.     Wherefore, Mr. Behan seeks appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3).

THIRD CAUSE OF ACTION
Breach of Fiduciary Duty (Failure to Monitor)
Under ERISA § 502(a)(3)
(Against KPMG as Plan Administrator)

46.     As an alternative claim for relief pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff alleges as follows: Plaintiff realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

47.     As a fiduciary of the Plan, KPMG is required pursuant to ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), to act solely in the interest of the participants and beneficiaries of the Plan and (A) "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan," and (B) to discharge their duties on an ongoing basis "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

48.     ERISA requires fiduciaries who appoint other fiduciaries to monitor the performance of those fiduciaries on an ongoing basis. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations. A monitoring fiduciary must take prompt and effective action to protect the plan and participants when the monitored fiduciaries fail to perform their obligations.

49.     KPMG breached its fiduciary duties by, *inter alia*, failing to ensure that Prudential performed its fiduciary obligations in administering Mr. Behan's benefits in accordance with the terms of the Plan and the provisions of ERISA and failing to take action to protect Mr. Behan as a plan participant when Prudential failed to perform its fiduciary obligations

in administering Mr. Behan's benefits in accordance with the terms of the Plan and ERISA.

50.     Through its actions and omissions, KPMG has (a) failed to act solely in the interest of the participants and beneficiaries of the Plan for the exclusive purpose of providing them benefits, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), and (b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

51.     Wherefore, Mr. Behan seeks appropriate equitable relief pursuant to the 29 U.S.C. §1132(a)(3).

FOURTH CAUSE OF ACTION
Breach of Fiduciary Duty (Co-Fiduciary Breach)
Under ERISA §§405 and 502(a)(3)
(Against KPMG as Plan Administrator)

52.     As an alternative claim for relief pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff alleges as follows: Plaintiff realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

53.     ERISA §405(a), 29 U.S.C. §1105(a)(3) provides that a fiduciary is responsible for its co-fiduciaries' breaches if it has knowledge of another fiduciary's breach, unless it made reasonable efforts under the circumstances to remedy the breach.

54.     KPMG, having been advised by Mr. Behan of Prudential's breaches of its fiduciary duties, and having failed to make reasonable efforts under the circumstances to investigate and/or remedy the breaches, or to investigate and determine the extent of Prudential's breach of its fiduciary duties with respect to the administration of Mr. Behan's claim, is liable for the breaches of its co- fiduciary Prudential with respect to the administration of Mr. Behan's benefits.

55.     Through its actions and omissions herein alleged, KPMG has failed to act solely in the interest of the participants and beneficiaries of the Plans for the exclusive purpose of

providing them benefits, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and has failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

56.     Wherefore, Mr. Behan seeks appropriate equitable relief pursuant to the 29 U.S.C. §1132(a)(3).

FIFTH CAUSE OF ACTION
Breach of Fiduciary Duty
Under ERISA §502(a)(3)
(Against KPMG as Plan Administrator)

57.     Plaintiff realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

58.     ERISA §209(a)(1), 29 U.S.C. §1059(a)(1) requires that an employer which sponsors an employee benefit plan maintain records with respect to each of its employees sufficient to determine the benefits due or which may become due to such employees.

59.     ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

60.     ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

61.     ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

62.     In committing the acts and omissions herein alleged, KPMG violated the provisions

of ERISA and breached its fiduciary duties in violation of ERISA §§404(a)(1)(A), (B) and (D), 29 U.S.C. §§1104(a)(1)(A)(B) and (D).

63.     Wherefore, Mr. Behan seeks appropriate equitable relief pursuant to the 29 U.S.C. § 1132(a)(3).

SIXTH CAUSE OF ACTION<br>Statutory Penalties for Withholding Documents<br>Under ERISA 502(c)

64.     Plaintiff realleges and incorporates by reference all prior allegations contained in this Complaint, as if fully restated herein.

65.     ERISA §502(c), 29 U.S.C. §1132(c), allows the Court in its discretion to award Plaintiff a statutory penalty in an amount up to $110 per document per day when plan or benefit administrators fail within 30 days to provide copies of documents requested in writing pursuant to 29 C.F.R. § 2560.503-1 and ERISA §§ 102, 104(b)(4), and 502(c), 29 U.S.C. §§ 1022, 1024(b)(4), and 1132(c).

66.     On March 10, 2023 and again on May 12, 2023, Mr. Behan sent written requests to the Claim and Benefit Administrator, requesting copies of all documents relied upon in deciding Mr. Behan's internal appeal. Mr. Behan never received any copies of those documents.

67.     Wherefore, Mr. Behan seeks an award of statutory penalties for failing to provide copies of documents requested.

DEMAND FOR RELIEF

WHEREFORE, Mr. Behan prays judgment as follows:

A.     For an award of benefits under the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

B.     In the alternative, for appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a declaration of Mr. Behan's rights to a full and fair review under ERISA; an injunction against KPMG and Prudential to prevent further failure to administer the plan in ways that violate ERISA and the Claims Regulation

and that violate the terms and requirements of the Plan; an order requiring Prudential's claim file to be amended to remove all inaccurate and incomplete information and Mr. Behan's claim be reevaluated with the correct information; and surcharge for the pecuniary injuries that Mr. Behan has suffered as a consequence of KPMG's and Prudential's violations of ERISA and breaches of their ERISA fiduciary duties;

C.     For an award of statutory penalties under ERISA § 502(c), 29 U.S.C.§ 1132(c), in the amount of $110 per day per document, for KPMG's failure to provide written documents upon request;

D.     For reasonable attorneys' fees and costs incurred by Mr. Behan in the prosecution of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1);

E.     For pre-judgment interest and post-judgment interest on any and all amounts awarded to Mr. Behan; and

F.     For all such other relief as the Court deems appropriate and equitable.


Dated: October 9, 2023              LAW OFFICES OF JOEL P WAELTY

                                    _____
                                    */s/ Joel P.Waelty*
                                    joel@waeltylaw.com
                                    Attorney for Plaintiff
                                    MATTHEW BEHAN